IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BETTY WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:14-cv-01106-MHT-SRW |
| | ) | |
| STEVEN T. MARSHALL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER and RECOMMENDATION OF THE MAGISTRATE JUDGE**[1]

Plaintiff Betty Wilson, who was convicted in an Alabama state court of capital murder in 1993, brings this lawsuit against the Alabama Attorney General and the Madison County District Attorney for allegedly violating her right to procedural due process, barring her access to the courts, and foreclosing her opportunity to prove her actual innocence. In 2010, Wilson filed a post-conviction motion in an Alabama court seeking access to and testing of deoxyribonucleic acid ("DNA") evidence that was collected from the crime scene under Alabama's then-newly enacted post-conviction DNA testing statute, Ala. Code § 15-18-200 ("DNA statute" or "DNA law"). The motion was denied in 2011, Wilson's appeal was dismissed for lack of jurisdiction, and two petitions for a writ of mandamus to the Alabama Court of Criminal Appeals and Alabama Supreme Court, also were, respectively, denied. Wilson challenges the constitutionality of the DNA statute and the denial of her

---

[1] Senior United States District Judge Myron H. Thompson referred this case to the undersigned for action or recommendation on all pretrial matters pursuant to 28 U.S.C. § 636(b). *See* Doc. 22.

motion, appeal, and mandamus petitions by the state courts. Wilson brings her claims through the remedial statutory vehicle of 42 U.S.C. § 1983.[2]

In addition to challenging the constitutionality of the DNA law and the outcome of her state court proceedings, Wilson asks the court to enter a judgment that provides her the following relief:

1. Ordering defendants to take all steps reasonably necessary to ensure that the physical evidence collected in connection with the investigation and prosecution of the crime for which plaintiff was convicted, including all of the evidence referenced in the complaint, is preserved.[3]

2. Ordering defendants to cooperate with plaintiff in selecting a mutually-agreeable, fully-accredited private DNA laboratory to test the evidence at the expense of the Innocence Project, or, in the alternative, ordering that the evidence be tested at a laboratory chosen by this Court.

3. Ordering defendants to release the physical evidence collected in connection with the investigation or prosecution of the crime for which plaintiff was convicted for DNA testing to the laboratory chosen by the parties or this Court, including, but not limited to:

    - The baseball bat,
    - The victim's bloodstained fingernail clippings,
    - The ski mask,

---

[2] A plaintiff is permitted to assert claims through § 1983 based upon a denial of post-conviction DNA testing that does not "necessarily imply the invalidity of [her] conviction or sentence." *Skinner v. Switzer*, 562 U.S. 521, 533-34, 131 S. Ct. 1289, 1298 (2011).

[3] As noted above, plaintiff asks for a judgment in which the court orders that the evidence at issue be "preserved." Doc. 1 at 19. These proceedings are not yet in a procedural posture for entry of a final judgment. Following a status conference held on February 28, 2018, the court directed defendants to file "a written notice addressing the current status of the evidence at issue in this case." Doc. 25 at 1. Defendants complied on March 12, 2018. *See* Doc. 26. No party has filed a motion seeking to compel defendants to preserve the evidence identified in plaintiff's complaint or defendants' March 12 notice during the pendency of these proceedings. However, in aid of the court's jurisdiction and in the interest of justice, the court finds that preservation of the evidence identified by defendants in the March 12 notice is warranted. Accordingly, defendants are ORDERED to preserve the evidence identified in the March 12, 2018 pending further proceedings.

- The hairs found inside the ski mask,
- The victim's bloody clothing,
- The cigarette butts found at the scene,
- The bloodstained carpet sample found near the victim's body, and
- The hairs collected from the victim's right hand.

4. Ordering reasonable attorneys' fees and costs.

5. Ordering such other and further relief as the Court deems just and proper.

Doc. 1 at 19-20.[4]

This matter is before the court on defendants' motion to dismiss plaintiff's complaint. *See* Doc. 8.[5] Defendants argue that the court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine; plaintiff's claims are barred by *res judicata*, the statute of limitations, and laches; and plaintiff's causes of action fail on their merits. Wilson opposes the motion to dismiss. *See* Doc. 15. The motion has been fully briefed. Upon consideration, the court concludes that defendants' motion to dismiss is due to be granted in part and denied in part.

## I.    Standard of Review

---

[4] In response to an order noted above, defendants apprised the court of the location of some of this evidence. *See* Doc. 26 at 1-2. Defendants represent that the baseball bat is in a state courthouse basement in Madison County in an unsealed brown grocery bag. The ski mask is in a cardboard box among numerous other exhibits in the same basement. The hair recovered from the victim's right hand and the hair recovered from the ski mask are on slides at the Huntsville laboratory of the Department of Forensic Science. *See id.* It is unknown to the court whether those items are in a condition that would permit DNA testing. The Huntsville Police Department reportedly has no other physical evidence from the investigation or prosecution of Wilson. *See id.* Defendants have not attested to the location of the victim's bloodstained fingernail clippings, the victim's body clothing, the cigarette butts, or the bloodstained sample of carpet from the crime scene. It appears on this record that those items may have been lost or destroyed over the course of time.

[5] The plaintiff moves for oral argument on the motion to dismiss. *See* Doc. 18; Doc. 21. The instant motion can be resolved on the record. Thus, the motions for oral argument will be denied.

Defendants bring the instant motion under Rule 12(b)(6). *See* Doc. 8 at 4. However, in addition to requesting dismissal for failure to state a claim upon which relief can be granted, defendants also move for dismissal due to lack of subject matter jurisdiction, which is a Rule 12(b)(1) defense. *See id.* at 4, 26-29. Accordingly, the court analyzes defendants' subject matter jurisdiction challenge under Rule 12(b)(1) separately from the 12(b)(6) arguments, and construes defendants' motion to dismiss as having two parts: a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to 12(b)(6). As to the Rule 12(b)(1) request, in any event, a federal court is "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,'and which have been entrusted to them by a jurisdictional grant authorized by Congress."*Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). A federal court is obliged to inquire on motion or *sua sponte* into subject matter jurisdiction "at the earliest possible stage in the proceedings."*Id.* at 410. Thus, the court addresses defendants' Rule 12(b)(1) jurisdictional challenge before weighing defendants' Rule 12(b)(6) arguments.

A.      **Rule 12(b)(1)**

The Rule 12(b)(1) standard of review was summarized in *Greenwell v. University of Alabama Bd. of Trustees*, 2012 WL 3637768 (N.D. Ala. 2012). The court explained:

> Challenges to subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure can exist in two substantially different forms: facial attacks and factual attacks. *Sinaltrainal v. Coca–Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). When presented with a facial attack on the complaint, the court determines whether the complaint has sufficiently alleged subject-

matter jurisdiction. *Sinaltrainal*, 578 F.3d at 1260. The court proceeds as if it were evaluating a Rule 12(b)(6) motion; that is, it views the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged in the complaint as true. *Id.*

On the other hand, factual attacks question "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). When a court is confronted with a factual attack, the standard of review diverges considerably:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Lawrence*, 919 F.2d at 1529 (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)). When a district court has pending before it both a 12(b)(1) motion and a 12(b)(6) motion, the generally preferable approach, if the 12(b)(1) motion essentially challenges the existence of a federal cause of action, is for the court to find jurisdiction and then decide the 12(b)(6) motion. *Jones v. State of Ga.*, 725 F.2d 622, 623 (11th Cir. 1984).

*Greenwell* at *5 (alterations in original); *see also McCoy v. Mallinckrodt Pharm., Inc.*,

2016 WL 1544732, at *2 (M.D. Ala. 2016), *report and recommendation adopted*, 2016

WL 1465967 (M.D. Ala. 2016) (quoting *Greenwell*'s standard of review).

The challenge presently before the court is a facial challenge regarding the

applicability of the *Rooker-Feldman* doctrine.

**B.     Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard also "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. While the complaint need not set out "detailed factual

allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555.

"So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Id.* at 558 (quoting 5 WRIGHT & MILLER § 1216, at 233-34 (quoting, in turn, *Daves v. Hawaiian Dredging Co.*, 114 F. Supp. 643, 645 (D. Haw. 1953)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id*.

Defendants assert that this court "should take judicial notice" of federal and state court proceedings related to the plaintiff's conviction and to appellate or other attacks on the conviction in evaluating the instant Rule 12(b)(6) motion, in addition to considering the plaintiff's allegations in the complaint. *See* Doc. 8 at 22 (internal marks and citation omitted). In support of this argument, defendants rely on *Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d 1237 (11th Cir. 2010), which was before the Court on

a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) as well as a Rule 12(b)(6) motion to dismiss.[6] *See id.* at 1241, 1255. The Court

> accept[ed] all the facts in the complaint as true and view[ed] them in the light most favorable to the nonmoving party. At the same time, however, [the Court] also [took] judicial notice of the state and federal court proceedings in which [plaintiff Cunningham] was convicted or attacked [her] conviction.

*Id.* at 1255 (citations, quotation marks, and footnote omitted).

Plaintiff contends that the court should follow *Cunningham* to the extent that the plaintiff's allegations of fact should be considered as true for purposes of the court's ruling on a motion to dismiss, but it should ignore *Cunningham* for the proposition that the court may take judicial notice of state and federal court proceedings related to plaintiff's conviction and challenges to that conviction. *See* Doc. 15 at 6-7. Wilson asserts, instead, that the court is limited to the "four corners" of the complaint and may only consider

---

[6] In *Cunningham,* the Eleventh Circuit noted the standard for considering facts alleged in the complaint, and for taking judicial notice of prior proceedings, within its discussion of a motion for judgment on the pleadings under Rule 12(c). This case is not before the court on a Rule 12(c) motion for judgment on the pleadings, but on a Rule 12(b)(6) motion to dismiss. However, the standard by which the court assesses plaintiff's allegations of fact and its authority to take judicial notice of appropriate matters of fact is the same in either instance. For a motion to dismiss under Rule 12(b)(6), "courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the [operative] complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509 (2007) (citation omitted). The same is true for a motion for judgment on the pleadings pursuant to Rule 12(c) – a court "must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001) (citing *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir.1999)). Moreover, as to judicial notice, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular … matters of which a court may take judicial notice." *Tellabs, Inc.*, 551 U.S. at 322 (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 and Supp. 2007)). *See also, e.g.*, Fed. R. Evid. 201; *Long v. Slaton*, 508 F.3d 576, 578 n. 3 (11th Cir. 2007) (citation omitted) (noting that the court is not always limited to the four corners of the complaint at the Rule 12(b)(6) stage, and taking judicial notice of undisputed facts contained in a report from a state agency).

exhibits attached to that pleading. *Id.* (quoting *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) ("[T]he scope of the [court's] review must be limited to the four corners of the complaint.") (brackets in plaintiff's brief); *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) ("When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.") (internal marks omitted)). However, as noted *supra*, a court must consider material facts of which it may take judicial notice in resolving a Rule 12(b)(6) motion to dismiss. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509 (2007).

The facts that the plaintiff was convicted, and that the state courts resolved her appeals, habeas petitions, and motions for DNA testing, are material to the plaintiff's claims and to the resolution of the motion to dismiss. Thus, as to those points alone, pursuant to Federal Rule of Evidence 201(b), the court takes judicial notice of the existence and outcome of the state and federal court decisions. *See Claudio v. Sec'y, Fla. Dep't of Corr.*, 578 F. App'x 797, 800 (11th Cir. 2014) ("Under Federal Rule of Evidence 201, [a court] may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.") (quoting Fed. R. Evid. 201(b)). The plaintiff's participation in and the outcome of those proceedings are a matter of public record, and the accuracy of this information "cannot reasonably be questioned." *Id.* However, the court does not and need

not take judicial notice of those courts' findings of fact or conclusions of law.[7] Also, "all facts set forth in the plaintiff's complaint [have been] accepted as true," and the court has otherwise "limit[ed] its consideration to the pleadings and exhibits attached thereto." *Grossman*, 225 F.3d at 1231 (internal quotation marks omitted).

## II.   Factual and Procedural Background

Following a trial in an Alabama state court in 1993, a jury determined that Wilson paid $5,000.00 to James White to kill her husband. White was the friend and lover of Wilson's sister, Peggy Lowe. The state argued at trial that, through Lowe, Wilson contacted White to commit the crime.

On May 22, 1992, Wilson's husband, Dr. Jack Wilson, M.D., was found murdered in the couple's home. He had been severely beaten about the head and body and stabbed twice in the chest. The majority of his estate of $ 6.3 million went to Wilson. From the crime scene, the police recovered (1) a baseball bat that police believed was used by the

---

[7] Plaintiff's concern about judicial notice appears to be that this court will consider the evidence of guilt or innocence in the state or federal court records, and weigh that evidence against the allegations of the complaint and the plaintiff's exhibits, to the plaintiff's detriment. *See* Doc. 15 at 7 ("[A] court, in ruling on a motion to dismiss a §1983 complaint alleging an unconstitutional denial of DNA testing, may not simply override a plaintiff's well-pleaded allegations that the testing would demonstrate her factual innocence by going beyond the four corners of the complaint and citing to inculpatory evidence admitted at the original criminal trial (particularly where that evidence was not overwhelming and conflicts with other, post-conviction, evidence asserted in the §1983 complaint, such as Mr. White's recantation)."). Plaintiff's worry is unwarranted. As noted above, the court need not consider and has not examined evidence of plaintiff's guilt or innocence in the state or federal court records in considering the ultimate issues of this lawsuit – *i.e.*, plaintiff's assertions that she was denied procedural due process, that Alabama's DNA statute is unconstitutional on its face and as applied to the plaintiff, that she was denied access to the courts, and that she has been denied the opportunity to prove actual innocence through DNA testing. The evidence on which plaintiff was convicted is immaterial to the resolution of the instant motion to dismiss.

perpetrator, (2) bloody fingernail clippings from the victim, (3) a ski mask that police believed was worn by the perpetrator, (4) hairs found inside the ski mask, (5) the victim's clothing, (5) cigarette butts believed to have been left by the perpetrator, (6) a bloodstained carpet sample found near the victim's body, and (7) hairs recovered from the victim's right hand.  These items have never been tested for DNA evidence.

Although White originally denied any involvement in the murder, he pleaded guilty and agreed to testify against Wilson and Lowe in exchange for avoiding the death penalty. Wilson asserts that her only link to the crime was through White. Wilson was convicted of murder, based largely on White's testimony, and sentenced to life in prison. On virtually the same evidence, a jury found Lowe not guilty of capital murder. A year after Wilson's trial, White recanted in an affidavit.

Following her conviction, Wilson appealed and filed several post-trial motions, including three motions under Rule 32 of the Alabama Rules of Criminal Procedure in 1994, 2004, and 2007, as well as a federal habeas petition in 1998. All were rejected. In addition, she filed a motion for DNA testing in 2002 that was unopposed by the Madison County District Attorney. However, the Alabama Attorney General intervened and opposed the motion. The state court dismissed the motion for DNA testing on jurisdictional grounds.

In 2009, Alabama enacted the DNA law that is at issue in this case. The law's first section states:

> An individual convicted of a capital offense who is serving a term of imprisonment or awaiting execution of a sentence of death, through written motion to the circuit court that entered the judgment of sentence, may apply

for the performance of forensic deoxyribonucleic acid (DNA) testing on specific evidence, if that evidence was secured in relation to the investigation or prosecution that resulted in the conviction of the applicant, is still available for testing as of the date of the motion, forensic DNA testing was not performed on the case at the time of the initial trial, and the results of the forensic DNA testing, on its face, would demonstrate the convicted individual's factual innocence of the offense convicted.

Ala. Code § 15-18-200(a). It is undisputed that Wilson qualifies to file a motion under § 15-18-200(a). The DNA law provides details on what must be in the plaintiff's motion as well as instructions to the trial judge.

Wilson filed a timely motion under the DNA statute. The Alabama Circuit Court Judge rejected plaintiff's motion on three independent grounds. That court's order states, *inter alia*:

> Having considered the arguments and representations made in pleadings on behalf of the petitioner and on behalf of the State of Alabama, and after careful review of all relevant and applicable law, the Court makes the following findings:
>
> (1)   Under Ala. Code § 15-18-200(a), the results of the forensic DNA testing, on its face, would not demonstrate the petitioner's factual innocence of the offense convicted.  Even if other DNA specimens are present on the evidence requested for forensic DNA testing, this would not, on its face, exonerate James White or the Petitioner of the murder of Dr. Jack Wilson.
>
> (2)   Under § 15-18-200(c),[8] Petitioner has failed to demonstrate that the evidence which the petitioner has requested be subject

---

[8] This section states:

> After notice to the state and an opportunity to respond, the circuit court may order forensic DNA testing and analysis if the court finds that all of the following apply:
>
> (1) The specific evidence which the petitioner has requested be subject to forensic DNA testing and analysis is still in existence and is in a condition that allows forensic DNA testing and analysis to be conducted which would yield accurate and reliable results.

to forensic DNA testing and analysis is in a condition that allows forensic DNA testing and analysis to be conducted which would yield accurate and reliable results. While Petitioner properly alleges that the evidence was not subjected to DNA testing at the time of Petitioner's trial and the evidence may still be in existence, Petitioner has failed to demonstrate to this Court that the evidence would yield accurate and reliable results if it is now subjected to DNA testing. Petitioner's statements that such evidence contains or is very likely to contain biological materials suitable for DNA testing is not sufficient proof that any such biological material would provide appropriate specimens suitable for DNA testing eighteen years after the murder of Dr. Jack Wilson. Furthermore, the provisions of Ala. Code § 15-18-200(c) are merely permissive and not binding upon this Court.

(3)     Finally, under Ala. Code § 15-18-200(f)(2), the 'court may not order testing in a motion for DNA testing if ... the court determines that there is no reasonable possibility that the testing will produce exculpatory evidence that would exonerate the applicant of the offense for which the applicant was convicted.'  This court hereby **finds** that there is no reasonable possibility that the testing will produce exculpatory evidence that would exonerate the applicant of the offense for which the applicant was convicted.

Doc. 1-1 at 2-3 (bold text in original).

After the state trial judge's adverse decision, Wilson appealed to the Alabama Court of Criminal Appeals, but the appeal was dismissed for lack of jurisdiction. That same court

---

(2) The evidence was not previously subjected to nuclear forensic DNA testing or was not subjected to another forensic DNA technology, and which may resolve an issue not previously resolved by any prior forensic DNA testing and analysis. The type of forensic DNA testing requested must be generally accepted in the forensic community with the results eligible for inclusion in the National DNA Index System of the Federal Bureau of Investigation (FBI).

Ala. Code § 15-18-200(c).

had previously held that decisions under Alabama's DNA statute were not appealable. *See* *Searcy v. State*, 77 So. 3d 174, 177 (Ala. Crim. App. 2011) ("Absent from § 15-18-200, Ala.Code 1975, is any provision authorizing an appeal from the denial of a postconviction motion for DNA testing. Neither can we find any statute or rule authorizing such an appeal. Accordingly, this Court has no jurisdiction to consider this appeal … ."). After the Court of Criminal Appeals denied plaintiff's petition for rehearing, Wilson filed petitions for a writ of mandamus in May and October 2012, but both the Alabama Court of Criminal Appeals and the Alabama Supreme Court denied the petitions as untimely and because the lower court lacked the ability to modify its decision.

This § 1983 lawsuit follows the Alabama Supreme Court's denial of Wilson's final petition for a writ of mandamus.

## III. Discussion

### A. The *Rooker-Feldman* Doctrine

Defendants assert that the *Rooker-Feldman* doctrine bars plaintiff's claims. Doc. 8 at 26-29.[9] Wilson opposes defendants' argument. The court concludes that the result of the

---

[9] Defendants argue that the Eleventh Circuit has already held that Alabama's procedures for seeking post-conviction DNA testing are constitutional. *See* Doc. 8 at 28-29 (citing *Cunningham*, 592 F.3d at 1262). The Alabama DNA law at issue in this case deals with post-conviction applications for DNA testing by those who were committed of capital crimes. *Cunningham* addresses Alabama's procedures for non-capital offenders, which differ from Ala. Code § 15-18-200. Defendants' arguments on this point are unavailing. As the Eleventh Circuit has held,

"[J]udicial decisions cannot make law beyond the facts of the cases in which those decisions are announced." *Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1207 (11th Cir. 2003); *accord Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010) ("We have pointed out many times that regardless of what a court says in its opinion, the decision can hold nothing beyond the facts of that case."); *United States v. Aguillard*, 217 F.3d 1319, 1321 (11th Cir. 2000) ("The holdings of a prior

application of *Rooker-Feldman* to the plaintiff's claims is that some are barred, while others survive.

Recently, the Eleventh Circuit discussed the *Rooker-Feldman* doctrine at length as follows:

> *Rooker-Feldman* raises a question about … subject matter jurisdiction, an issue [federal courts] are always obliged to examine. *See, e.g., Reahard v. Lee Cty.*, 978 F.2d 1212, 1213 (11th Cir. 1992). The *Rooker-Feldman* doctrine is a limitation on the jurisdiction of the inferior federal courts. This limitation is intended to prevent the federal courts from hearing what are essentially appeals from state court decisions, which may only be heard by the United States Supreme Court. The doctrine is rooted in an understanding that Congress has given only the United States Supreme Court the ability to hear an appeal from a state court decision. *See* 28 U.S.C. § 1257(a) ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court [where appealed on certain grounds]."); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005) ("§ 1257, as long interpreted, vests authority to review a state court's judgment solely in [the Supreme] Court."). The federal district courts, meanwhile, have been given original, not appellate, jurisdiction. *See, e.g.*, 28 U.S.C. §§ 1331, 1332.
>
> The foundation of the *Rooker-Feldman* doctrine rests on two United States Supreme Court cases. In the first one, *Rooker v. Fidelity Trust Co.*,

---

decision can reach only as far as the facts and circumstances presented to the Court in the case which produced that decision." (quotation marks omitted)). Statements in an opinion that are not "fitted to the facts," *Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 873 (11th Cir. 2009), or that extend "further than the facts of that case," *Nguyen v. United States*, 556 F.3d 1244, 1260 (11th Cir. 2009), or that are "not necessary to the decision of an appeal given the facts and circumstances of the case," *Aron v. United States*, 291 F.3d 708, 716 (11th Cir. 2002) (Carnes, J., concurring) (quotation marks and citation omitted), are dicta. We are not required to follow dicta in our own prior decisions. *McNely v. Ocala Star–Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996). Nor for that matter is anyone else. *Edwards*, 602 F.3d at 1298 ("[D]icta is not binding on anyone for any purpose.").

*Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 762 (11th Cir. 2010). Thus, *Cunningham* is not applicable in the manner argued by defendants to the instant action.

263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the Supreme Court rejected, as falling outside the jurisdiction of the district court, a suit that sought to have an Indiana state court's judgment "declared null and void." *Id.* at 414, 44 S.Ct. 149. There, the parties in federal court were the same parties who had litigated in state court. *Id.* Though the federal suit raised constitutional claims, "it was the province and duty of the state courts to decide" such claims. *Id.* at 415, 44 S.Ct. 149. The Supreme Court noted that under jurisdiction-conferring statutes, "no court of the United States other than [the Supreme] [C]ourt could entertain a proceeding to reverse or modify the judgment." *Id.* at 416, 44 S.Ct. 149.

Sixty years later in *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the Supreme Court held that a federal district court was without the power to review a District of Columbia court's individualized adjudication, even though the federal court could review general challenges to District of Columbia court rules. The decision which could not be considered in an inferior federal court, regarding whether certain individuals should be permitted to sit for the bar examination, was "judicial in nature," and "a United States District Court has no authority to review final judgments of a state court in judicial proceedings," including claims that were "inextricably intertwined" with the state court decision. *Id.* at 479, 482, 486, 103 S.Ct. 1303. However, a district court could hear allegations regarding the facial validity of a state court rule. *Id.* at 487, 103 S.Ct. 1303.

More recently, the Supreme Court concluded that the inferior federal courts had been applying *Rooker-Feldman* too broadly. *Exxon Mobil*, 544 U.S. at 283, 125 S.Ct. 1517 ("[T]he [*Rooker-Feldman*] doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases."). The Supreme Court expressly limited *Rooker-Feldman*'s applicability. In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005), the Supreme Court clarified that *Rooker-Feldman* bars only that class of cases in which federal litigants seek reversal of state court decisions. The doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284, 125 S.Ct. 1517. The Supreme Court has also clarified that "*Rooker-Feldman* is not simply preclusion by another name." *Lance v. Dennis*, 546 U.S. 459, 466, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006) (again stating that *Rooker–Feldman* applies "where a party in effect seeks to take an appeal of an unfavorable state-court decision," *id.*). The doctrine neither "override[s] or supplant[s] preclusion doctrine" nor "augment[s] the circumscribed

doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." *Exxon Mobil*, 544 U.S. at 284, 125 S.Ct. 1517.

Following *Exxon Mobil*, our Circuit recognized the limited scope of the *Rooker-Feldman* doctrine as it has been described by the Supreme Court. We have since declined to apply our previous test for *Rooker-Feldman* analysis and have instead hewn closely to the language of *Exxon Mobil*. *See Nicholson v. Shafe*, 558 F.3d 1266, 1274 (11th Cir. 2009). Consistent with the directions of the Supreme Court, we now apply *Rooker-Feldman* to bar only those claims asserted by parties who have lost in state court and then ask the district court, ultimately, to review and reject a state court's judgments. *Id.* at 1268 (quoting *Exxon Mobil*, 544 U.S. at 284, 125 S.Ct. 1517).

To determine which claims invite rejection of a state court decision, we continue to apply an inquiry similar to the one that preceded *Exxon Mobil*. We continue to consider whether a claim was either (1) one actually adjudicated by a state court or (2) one "inextricably intertwined" with a state court judgment. *See Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (*per curiam*). And we have continued to describe a claim as being "inextricably intertwined" if it asks to "effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues." *Id.* (internal quotation marks and citation omitted).

Notably, however, a federal claim is not "inextricably intertwined" with a state court judgment when there was no "reasonable opportunity to raise" that particular claim during the relevant state court proceeding. *Id.* (quoting *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996)). Thus, the class of federal claims that we have found to be "inextricably intertwined" with state court judgments is limited to those raising a question that was or should have been properly before the state court. For example, in *Casale*, we held that *Rooker-Feldman* barred a federal district court from exercising jurisdiction where an ex-husband sought an injunction to stop domestication of out-of-state contempt orders. *Id.* at 1261. There, though the federal and state claims were different in name, their essential inquiry was the same – whether there was a requirement to pay amounts due under a divorce decree. *Id.* Thus, where arguments, even ones grounded in federal law, were not "offer[ed] ... to the state courts – or if the state courts did not buy them – [they could not be] unload[ed] ... by attempting to sell them" in federal court. *Id.*

17

*Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1284-86 (11th Cir. 2018).

Seven years before *Target Media Partners*, the Supreme Court held that *Rooker-Feldman* did not bar a Texas man's claims that a Texas DNA statute, as "authoritatively construed" by the Texas Court of Criminal Appeals in his two failed post-conviction attempts to obtain access to evidence for DNA testing by way of the only statutory avenue available to him, violated procedural due process under the Fourteenth Amendment. *Skinner*, 562 U.S. at 531-33. In *Skinner*, the Court reasoned that the claims were not an attack directly on the Texas court's holdings but, instead, on the constitutionality of the statute as it was interpreted and applied by the Texas Court of Criminal Appeals. *Id.*

Thereafter, six years prior to *Target Media Partners* and approximately fourteen months after the Supreme Court decided *Skinner*, the Eleventh Circuit held that *Rooker-Feldman* is an extremely narrow doctrine that bars an as-applied challenge to a state court's application of a post-conviction DNA testing statute. *Alvarez*, 679 F.3d at 1262-63. In *Alvarez*, a plaintiff challenged a state court's application of Florida's DNA law, which requires, among other things, that a trial court find that "there is a reasonable probability that the movant would have been acquitted or would have received a lesser sentence if the DNA evidence had been admitted at trial." *Alvarez*, 679 F.3d at 1260 (quoting Fla. R. Crim. P. 3.853(c)(5)). When the plaintiff lost in state court on this ground, he sued in federal court under an as-applied procedural due process theory. *Id.* at 1262. The court found it lacked jurisdiction under § 1983 because the as-applied challenge, even under the banner of a procedural due process claim, was a thinly veiled attempt to nullify the state court's judgment in federal court. *Id.*

The Court discussed *Skinner* as follows:

> Alvarez's claim is [] unlike the claim before the Supreme Court in
> *Skinner* … where the Court held that the *Rooker-Feldman* doctrine did not
> bar a claim that Texas's DNA access statute, as authoritatively construed by
> the Texas courts, was unconstitutional. *Id.* at 1297-98. On this point, *Skinner*
> stands for the unremarkable proposition that the existence of a state court
> judgment interpreting or relying upon a statute does not bar a federal court
> from entertaining an independent challenge to the constitutionality of that
> statute. *Id.* at 1298 ("[A] state-court decision is not reviewable by lower
> federal courts, but a statute or rule governing the decision may be challenged
> in a federal action. *Skinner*'s federal case falls within the latter category.").
> Again, Alvarez has abandoned any such broad [facial] challenge to the
> constitutionality of Florida's DNA access procedures in this case, and our
> holding that the *Rooker-Feldman* doctrine bars his [as applied] procedural
> due process attack on the state court judgment is wholly consonant with the
> Supreme Court's reasoning in *Skinner*.

*Alvarez*, 679 F.3d at 1263.

Defendants argue that *Alvarez* governs this case – *i.e.*, that the plaintiff's as-applied

challenge to the DNA statute is barred by *Rooker-Feldman*. Like *Alvarez*, this case involves

procedural due process challenges to a state court's adverse ruling. However, plaintiff

Wilson also has raised additional facial challenges, which she characterizes as attacks on

Alabama's DNA statute as it has been authoritatively construed by Alabama courts.[10]

---

[10] Regardless of the plaintiff's characterization of her constitutional challenges, the court itself
must determine whether plaintiff is asserting facial, as-applied, or quasi-facial challenges to
Alabama's DNA statute. The plaintiff's labels or conclusory assertions are not controlling. *See DA
Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1261-62 (11th Cir. 2007) ("Although L.C.
argues in its appellate brief that it is challenging the constitutionality of the County noise ordinance
either facially or as applied … we examine the plaintiff's cause of action for what it actually is,
not for what the plaintiff would have it be.") (citing *McKinney v. Pate*, 20 F.3d 1550, 1560 (11th
Cir.1994), *cert. denied*, 513 U.S. 1110, 115 S.Ct. 898, (1995)). The type of constitutional challenge
is gleaned from the plaintiff's requests for relief. In other words, a court must "look to the scope
of the relief requested to determine whether a challenge is facial or as-applied in nature." *Scott*,
717 F.3d at 862 (quoting *Doe v. Reed*, 561 U.S. 186, 130 S.Ct. 2811, 2817 (2010) (marks omitted)).
"[T]he line between facial and as-applied relief is a fluid one, and many constitutional challenges
may occupy an intermediate position on the spectrum between purely as-applied relief and

complete facial invalidation." *Scott*, 717 F.3d at 865 (citing *Doe*, 561 U.S. at 194, 130 S. Ct. at 2817) ("The claim is 'as applied' in the sense that it does not seek to strike the [statute] in all its applications, but only to the extent it covers referendum petitions. The claim is 'facial' in that it is not limited to plaintiffs' particular case, but challenges application of the law more broadly to all referendum petitions. … The label is not what matters. The important point is that plaintiffs' claim and the relief that would follow[.]")).

"A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself." *Am. Fed'n of State, Cty. & Mun. Employees Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir. 2013) (quoting *United States v. Frandsen*, 212 F.3d 1231, 1235 (11th Cir. 2000) (marks omitted)). In evaluating a facial attack on a statute, the court is obligated to follow the "no set of circumstances" test of *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). "[W]hen a plaintiff mounts a facial challenge to a statute or regulation, the plaintiff bears the burden of proving that the law could never be applied in a constitutional manner." *Scott*, 717 F.3d at 863 (11th Cir. 2013) (quoting *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1262 (11th Cir. 2007) (marks omitted)).

"As a general matter, courts strongly disfavor facial challenges, and … courts construe a plaintiff's challenge, if possible, to be as-applied." *Scott*, 717 F.3d at 864 (citations and marks omitted). "Unless the statute is unconstitutional in all its applications, an as-applied challenge must be used to attack its constitutionality." *Williams v. Pryor*, 240 F.3d 944, 953 (11th Cir. 2001).

Quasi-facial or "intermediate" challenges also must meet the stringent demands of *Salerno*.

*Salerno* also applies when a court grants relief that is quasi-facial in nature—that is, relief that reaches beyond the plaintiffs in a case. In *Doe v. Reed*, for instance, the Supreme Court considered a challenge that a state law violated the First Amendment when applied to referendum petitions. 130 S.Ct. at 2817. The Court noted that characterizing the challenge as either facial or as-applied was problematic because the challenge "obviously ha[d] characteristics of both: The claim [wa]s 'as applied' in the sense that it d[id] not seek to strike the PRA in all its applications, but only to the extent it covers referendum petitions. The claim [wa]s 'facial' in that it [wa]s not limited to plaintiffs' particular case …." *Id.* When a plaintiff brings this sort of quasi-facial challenge, "[t]he label is not what matters." *Id.* Where "an injunction ... reach[es] beyond the particular circumstances of these plaintiffs," it "must therefore satisfy [the Supreme Court's] standards for a facial challenge to the extent of that reach." *Id.*

*Scott*, 717 F.3d at 863. Wilson's challenges are facial and as-applied. If any of her claims were construed as quasi-facial, however, that is a distinction without a difference, as *Salerno* applies to facial and quasi-facial challenges alike.

Wilson argues that any reading of *Alvarez* as barring as applied challenges similar to hers is "wrong." Doc. 15 at 20 ("To the extent that *Alvarez* ... is read as barring as applied due process challenges to state statutes under the *Rooker-Feldman* doctrine, with all respect, it is wrong."). However, this court is not at liberty to draw that conclusion; it is bound by Supreme Court and published Eleventh Circuit decisions.

In light of *Skinner* and *Alvarez*, the court lacks jurisdiction here to consider Wilson's as-applied challenges or her collateral attacks on state court decisions under the *Rooker-Feldman* doctrine, as they are one and the same. *See Target Media Partners*, 881 F.3d at 1289 (noting that the Eleventh Circuit "has held that an as-applied challenge to state DNA access procedures was barred by *Rooker-Feldman*.") (citing *Alvarez*, 679 F.3d at 1263); *see also Skinner*, 562 U.S. at 531-33 (2011) (holding that a claim attacking as unconstitutional a Texas statute governing post-conviction access to DNA evidence as "authoritatively construed" by the Texas Court of Criminal Appeals is an independent claim that "does not challenge the [court's] decisions themselves" is not barred by *Rooker-Feldman*); *Alvarez*, 679 F.3d at 1263-64; *LaMar v. Ebert*, F. App'x 279, 287-88 (4th Cir. 2017) (reversing a District Court's ruling in light of *Skinner* and holding *Rooker-Feldman* inapplicable because the petitioner for post-conviction DNA evidence under Virginia's DNA law adequately alleged claims that the DNA statute violated the petitioner's due process rights which were independent of the petitioner's challenges to the state court's adverse decision); *Cooper v. Ramos*, 704 F.3d 772, 780 (9th Cir. 2012) ("In contrast to *Skinner*, where the prisoner asserted that the Texas statute was constitutionally inadequate as to *any* prisoner who failed to seek DNA testing before trial, Cooper does not actually

launch a broadside against the constitutionality of [a state statute]"); *Spuck v. Pennsylvania*, 456 F. App'x 72, 73 (3d Cir. 2012) (there is no relief under *Skinner* for a plaintiff who did not challenge the specific procedures afforded under Pennsylvania's DNA statute); *Parker v. District Court of Oklahoma County*, 2015 WL 9690663, at *3 (W.D. Okla. 2015) (finding *Alvarez* persuasive and deciding that *Rooker-Feldman* barred the plaintiff's claims because "[w]holly absent from Plaintiff's Complaint is any constitutional due process claim challenging the procedures set forth in Oklahoma's Postconviction DNA Act"); *Proctor v. Chabot*, 2011 WL 6655694, at *3 (E.D. Mich. 2011) (A plaintiff's claims that invite the court to pass judgment on state court rulings are barred by *Rooker-Feldman*, but "to the extent that Plaintiff's due-process challenge is an independent action that does not invite this Court to review the state court's decision, his claim is not barred by the doctrine.").

Wilson comes perilously close to asserting only as-applied due process challenges in her complaint by tethering her facial challenge, in part, to the Alabama trial court's denial of her motion for DNA testing. *See Commonwealth Plaza Condo. Ass'n v. City of Chicago*, 693 F.3d 743, 746 (7th Cir. 2012) ("Plaintiffs did not suffer an out-of-court injury and then fail to obtain relief from the state court. They allege an injury from the state court judgment rejecting their constitutional challenge and upholding the rezoning. The "binding law" to which plaintiffs' [sic] refer as the source of their injury is the Illinois Appellate Court's decision itself. Absent that state court ruling, plaintiffs would not have suffered the alleged injury they are asking the federal courts to redress, and that is a clear symptom of the *Rooker-Feldman* bar.") (internal citation omitted). However, Wilson does not predicate

22

her facial challenge exclusively on the Alabama trial court's decision, for such a claim would not constitute a facial attack and, alternatively, could be viewed as an impermissible as-applied challenge or a barred invitation for this court to pass judgment on the state court's decision in violation of *Rooker-Feldman*.]

Thus, the court lacks subject matter jurisdiction under *Rooker-Feldman* to hear Wilson's claims in Count I that are direct attacks on the state court's decisions with regard to her motion under Alabama's DNA law or her as-applied challenges, which repackage an attack on the state court's decision under the guise of a due process claim. The *Rooker-Feldman* jurisdictional bar extends to plaintiff's assertion in Count II that the Alabama Court of Criminal Appeals and Alabama Supreme Court improperly dismissed her appeal for lack of jurisdiction and denied her petitions for a writ of mandamus.

However, *Rooker-Feldman* does not preclude plaintiff's facial challenge to Alabama's DNA law both directly, and as that statute has been authoritatively construed by Alabama courts in cases that are unrelated to her motion for DNA testing.

**B.** ***Res Judicata***

In considering "whether to give *res judicata* effect to a state court judgment, [the court] must apply the *res judicata* principles of the law of the state whose decision is set up as a bar to further litigation." *Muhammad v. Sec'y, Florida Dep't of Corr.*, 739 F.3d 683, 688 (11th Cir. 2014) (internal quotation marks omitted). The elements of *res judicata* under Alabama law are "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same

cause of action presented in both actions." *Ex parte Webber*, 157 So. 3d 887, 892 (Ala. 2014) (internal quotation marks omitted) (emphasis in original removed).

Wilson's § 1983 suit alleging constitutional violations in federal court is not the same cause of action as her attempt to obtain DNA testing under Alabama's DNA law in state court. Thus, there is not a prior judgment on the merits, and *res judicata* is inapplicable here.

### C.    Statute of Limitations

Actions brought under § 1983 in Alabama are subject to a two-year statute of limitations that begins to run when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for their rights." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) (quoting *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987) (internal marks omitted)). "Thus Section 1983 actions do not accrue until the plaintiff knows or has reason to know that [she] has been injured." *Mullinax*, 817 F.2d at 716.

The defendants argue that the "earliest possible date for accrual of this cause of action would have been 1997 when Wilson's conviction was final and STR-DNA testing was readily available." Doc. 8 at 24-25. Defendants' position is that the 2-year statute of limitations applies because Wilson did not raise her DNA testing argument until 2010, despite her actual knowledge of the testable items from the crime since the early 1990's and multiple Rule 32 motions since her conviction. Defendants do not offer a final "possible date for accrual," but that omission is irrelevant to the resolution of the

defendants' statute of limitations argument. The plaintiff's causes of action asserted in the instant lawsuit did not accrue in 1997 or otherwise outside the limitations period.

Alabama's DNA law allows anyone serving a sentence for a capital offense who was convicted prior to the enactment of that law to file a motion for DNA testing within one year after August 1, 2009. *See* Ala. Code § 15-18-200. There is no dispute that plaintiff made a timely motion to the state trial court. Plaintiff's motion was denied by the trial court on August 19, 2011, and her last option for appellate review – a petition for a writ of mandamus to the Alabama Supreme Court – was rejected on October 23, 2012. The Alabama Supreme Court's decision on the plaintiff's 2010 motion for DNA testing gave finality to the state court proceedings and put plaintiff on notice of potential claims that were ripe for review. *See, e.g.,* 16 C.J.S. Constitutional Law § 243 ("An as-applied constitutional challenge to a statute is brought during or after a trial on the merits because it is only then that the trial judge and reviewing courts have the particular facts and circumstances of the case needed to determine whether the statute or law has been applied in an unconstitutional manner."). This lawsuit was filed exactly two years after the Alabama Supreme Court's ruling – on October 23, 2014. *See* Doc. 1. Thus, plaintiff filed this lawsuit within the applicable statute of limitations.

### D.    Laches

Defendants argue that plaintiff's claim is barred by the common law doctrine of laches because plaintiff knew or should have known of the claims brought in this lawsuit "years ago because she has known of the existence of the evidence and the availability of DNA testing," and because defendants are prejudiced as a result of plaintiff's delay in

asserting her claims. Doc. 8 at 25. "To establish laches, [the defendants] must demonstrate (1) there was a delay in asserting a right or a claim, (2) the delay was not excusable, and (3) the delay caused [defendants] undue prejudice." *United States v. Barfield*, 396 F.3d 1144, 1150 (11th Cir. 2005) (citing *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1545 (11th Cir. 1986)).

As with defendants' statute of limitations argument, defendants are incorrect about the accrual date of plaintiff's claims. The fact that plaintiff knew about DNA testing and the evidence against her from the 1990's is immaterial to the plaintiff's claims, which derive entirely from Alabama's DNA law, enacted in 2009; from the state court's denial of her motion for DNA testing; and her subsequent appeals and petitions for mandamus relief. Wilson could not have asserted "these claims much earlier" – *i.e.*, in the 1990s – because the claims arise from plaintiff's prayer for relief under an Alabama law that was enacted in 2009. Doc. 8 at 25. Plaintiff timely availed herself of Alabama's DNA law in 2010 by filing a motion in the trial court, and she brought this lawsuit in a timely manner after her claims accrued. There was no delay. Alternatively, the court finds that any delay is excusable.

### E.     Facial Due Process Claim – Alabama's DNA Law

The Supreme Court has declined to recognize "a freestanding [substantive due process] right to access DNA evidence for testing[.]" *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 73, 129 S.Ct. 2308, 2323 (2009). However, the Court has allowed a limited procedural due process right to DNA testing if the right is provided under state law. *See id.* at 68-70. Plaintiff's due process challenges are to the procedures Alabama has in place to effectuate this right through its DNA statute.

To consider a right to due process under the Fourteenth Amendment, the court must first determine the underlying liberty interest created by law. *Id.* at 67-68. A "state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right." *Id.* at 68. In the context of post-conviction DNA testing, the underlying right to liberty is circumscribed because "a criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Id.* "The State accordingly has more flexibility in deciding what procedures are needed in the context of postconviction relief." *Id.* Indeed, "[f]ederal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id.*

Similarly to the respondent in *Osborn*e, Wilson has "a liberty interest in demonstrating [her] innocence with new evidence under state law" under the conditions set forth in Alabama's DNA law. *Osborne*, 557 U.S. at 67-68. The question, then, is whether the procedures provided by Alabama law are "fundamentally inadequate" to vindicate this right?

Plaintiff's complaint is not a model of perfect pleading; her claims and petitions for relief concerning Count I are somewhat ambiguous. The plaintiff's facial and as-applied challenges under Count I invite the court to determine the constitutionality of Alabama's DNA law both on its face and as applied by the state trial court, in light of what plaintiff categorizes as "authoritative" construction by Alabama courts of the DNA law – a reference, in part, to the trial court's decision denying plaintiff's motion for DNA testing. However, in the section of the complaint setting out plaintiff's requests for relief, Wilson

does not actually ask the court to declare Alabama's DNA law unconstitutional or to strike it down due to its alleged constitutional defects.

The court does not consider this omission in the prayer for relief fatal to plaintiff's constitutional challenges, for two reasons. First, were the court to find under Rule 12(b)(6) that the complaint fails to put the defendants on notice of the implicit requests for relief regarding Count I, it also would be compelled to afford plaintiff an opportunity to amend her complaint in the interest of justice pursuant to Rule 15 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)) ("Leave to amend should be liberally granted when necessary in the interest of justice. … '[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.'"). Second, the defendants' motion to dismiss and its reliance on *Skinner* demonstrate that defendants have assumed, and thus already are on notice, that plaintiff brings both facial and as-applied challenges to Alabama's DNA law on procedural due process grounds, so any delay to permit amendment would serve no practical purpose. *See* Doc. 8.[11]

For purposes of assessing Wilson's facial procedural due process claim with respect to Alabama's DNA law,

---

[11] Accordingly, the court will proceed on the assumption that plaintiff is asking the court to declare Alabama's DNA law unconstitutional or to strike it down due to its alleged constitutional defects, unless plaintiff otherwise notifies the court on or before the date on which objections are due.

> the question is whether consideration of [Wilson's] claim within the framework of the State's procedures for postconviction relief "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," or "transgresses any recognized principle of fundamental fairness in operation." *Medina v. California*, 505 U.S. 437, 446, 448, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) (internal quotation marks omitted); *see Herrera*, *supra*, at 407-408, 113 S.Ct. 853 (applying *Medina* to postconviction relief for actual innocence); *Finley*, *supra*, at 556, 107 S.Ct. 1990 (postconviction relief procedures are constitutional if they "compor[t] with fundamental fairness"). Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided.

*Osborne*, 557 U.S. at 69, 129 S.Ct. at 2320. "Historical practice is probative of whether a procedural rule can be characterized as fundamental." *Medina*, 505 U.S. at 446, 112 S.Ct. at 2577 (citations omitted).

The plaintiff has made allegations that call into question the facial constitutionality of Alabama's DNA law sufficiently to survive a Rule 12(b)(6) motion to dismiss. Wilson asserts, in opposition to the instant motion, that the statute and Alabama courts have created a "Catch 22" by requiring the plaintiff to demonstrate that the DNA evidence is in such a condition that it may be subjected to reliable testing and may yield accurate and reliable results, without allowing a petitioner under the DNA law any access to the DNA evidence to conduct an examination in order to provide a court with evidence that is probative on that issue. *See* Ala. Code 15-18-200(c). Also, the provisions of § 15-18-200(c) are permissive, not binding, a fact which arguably may provide no guarantee of any due process at all for one who qualifies to file a motion under Alabama's DNA law to vindicate the limited liberty interest identified in *Osborne*.

Moreover, Alabama's DNA law provides, *inter alia*,

> The court may not order the testing requested in a motion for DNA testing if, after review of the petition, the state's response, if required, and the record of the trial of the applicant, the court determines that there is no reasonable possibility that the testing will produce exculpatory evidence that would exonerate the applicant of the offense for which the applicant was convicted.

Ala. Code § 15-18-200(f)(2). Under the DNA law, a movant must produce "[p]rima facie evidence demonstrating that the identity of the perpetrator was at issue in the trial that resulted in the conviction of the petitioner and that DNA testing of the specified evidence would, *assuming exculpatory results*, demonstrate the factual innocence of the applicant of the offense for which the petitioner was convicted." Ala. Code § 15-18-200(e)(3) (emphasis supplied).[12] Yet, as the statute is written, movants could meet all requirements of § 15-18-200(e) in their motions, and additionally satisfy § 15-18-200(c), thereby obligating the trial judge to grant the motion for DNA testing under § 15-18-200(f)(1)(a) if the remainder of the requirements of §15-18-200(f) are met – but, nevertheless, find their motion properly denied if the trial court rejects the prima facie evidence of exculpatory results and finds, without the benefit of analysis or testing of DNA evidence by anyone, that the DNA testing which has never occurred cannot reasonably produce exculpatory evidence that would exonerate the movant. Plaintiff's allegations sufficiently suggest that this statutory escape hatch may present facial due process problems.

---

[12] While a movant under Alabama's DNA statute must make a prima facie showing that the testing will produce exculpatory evidence, *see* Ala. Code § 15-18-200(e)(3), "[t]he evidence sought by [Wilson] is not, by definition, exculpatory. Like the DNA testing at issue in *Skinner*, the DNA testing may yield incriminating or inconclusive results." *Proctor v. Chabot*, 2011 WL 6655694, at *3 (E.D. Mich. 2011).

Plaintiff has pled allegations that allow her to proceed beyond a Rule 12(b)(6) motion, and to argue that Alabama's DNA law does not provide sufficient process because, ultimately, the law does not actually guarantee any process by which a movant could be entitled to DNA testing. Generally, regardless of the scope of the procedural due process right, "the fundamental safeguards of procedural due process must be real, and present. … What is constant and identifiable in every varying factual situation where different forms of the basic procedural due process safeguards appear is that they are meaningful and reasonable." *Craig v. Carson*, 449 F. Supp. 385, 390-91 (M.D. Fla. 1978) (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657 (1950)). The plaintiff's complaint sufficiently places the question of whether there are meaningful or reasonable safeguards for procedural due process in Alabama's DNA law before the court.

The court does not make any determination here about the ultimate merits of the plaintiff's arguments, or any potential arguments to be made with respect to any future motion for judgment on the pleadings or motion for summary judgment; it finds only that the allegations of her complaint, given the plain language of Alabama's DNA law, call the constitutionality of the DNA law into question sufficiently to state a claim and allow Wilson to move beyond the initial pleading stage of this lawsuit – *i.e.*, to seek to demonstrate that there is no set of circumstances under which Alabama's DNA law provides adequate due process. "[O]n a motion to dismiss for failure to state a claim, the question … [is] 'not whether [Wilson] will ultimately prevail' on [her] procedural due process claim, *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), but whether [her] complaint [is] sufficient to cross the federal court's threshold,

*see Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)."

*Skinner*, 562 U.S. at 529-30, 131 S.Ct. at 1296.

    **F.    Denial of Due Process on Appellate Review**

    Assuming, without deciding, that Wilson could circumvent the barrier raised by *Rooker-Feldman* to her denial of due process on appellate review claim, this claim fails on its merits. Plaintiff asserts that she was unable to appeal the trial court's denial of her motion under Alabama's DNA law because Alabama's state courts thwarted her attempts to appeal or petition for a writ of mandamus via the timing of decisions in other, unrelated cases by the Alabama Court of Criminal Appeals. The relevant events are as follows:

- July 8, 2011:  Alabama Court of Criminal Appeals holds that there is no right to appeal a trial court's order under the state DNA statute.  *See Searcy v. State*, 77 So. 3d 174 (Ala. Crim. App. 2011).

- August 19, 2011: The state court trial judge denies Wilson's motion for DNA testing.

- September 28, 2011: Wilson files a notice of appeal of the trial judge's decision.

- September 30, 2011: Presumptive deadline for Wilson to have filed a writ of mandamus.[13]

- October 5, 2011: Court of criminal appeals orders Wilson to show cause why her appeal should not be dismissed for presenting a non-appealable issue.

---

[13] Under Alabama law, a petition for mandamus "shall be filed within a reasonable time."  Ala. R. App. P. 21.  "The presumptively reasonable period is 42 days from the date of the ruling that is the subject of the petition." *Ex parte Hammond*, 93 So. 3d 172, 174 (Ala. Crim. App. 2012).

- October 26, 2011: Court of Criminal Appeals dismisses Wilson's appeal for lack of jurisdiction under *Searcy*.

- March 23, 2012: The Alabama Supreme Court considers a mandamus petition in an unrelated case, *Hammond v. State*, 93 So. 3d 172 (Ala. Crim. App. 2012), but denies the petition as untimely and without merit. The Court holds that mandamus relief is the exclusive pathway for relief for a loser at the trial court level on a motion under Alabama's DNA law, Ala. Code § 15-18-200. *Hammond,* 93 So. 3d at 92-93.

- May 2, 2012: Wilson files a mandamus petition in the Alabama Court of Criminal Appeals.

- September 6, 2012: Wilson's mandamus petition to the Court of Criminal Appeals is denied as untimely.

- October 23, 2012: Wilson files a petition for a writ of mandamus with Alabama Supreme Court; it is denied as untimely.

Wilson's primary argument here is that the Alabama Court of Criminal Appeals and Alabama Supreme Court should have allowed her to file her mandamus petitions because she did not know from the date she filed her motion for DNA testing in 2010 that mandamus was her only avenue for relief. But the motion filing date is irrelevant. The Alabama Court of Criminal Appeals decided *Searcy* in July 2011, approximately two months before Wilson filed an appeal in September 2011. Wilson either knew or should have known that the trial court's order was not appealable when she filed her appeal. Moreover, while *Hammond* noted that a petition for a writ of mandamus was the only avenue for relief available if a trial court denied a motion made pursuant to Alabama's

33

DNA law, *see* 93 So. 3d at 92-93, Wilson did not need to be instructed by the Alabama Court of Criminal Appeals that a petition for a writ of mandamus was available to seek appellate review of a trial court's non-appealable order. Mandamus relief existed long before the trial court denied Wilson's motion for DNA testing.

A petition for a writ of mandamus is a well-established method of challenging a lower court's non-appealable orders in Alabama, and the right to seek mandamus relief existed for at least decades before Wilson's motion for DNA testing was denied by a non-appealable order. *See*, *e.g.*, *Ex parte McDanal*, 32 Ala. App. 445, 446, 27 So. 2d 504, 505 (Ala. Ct. App. 1946) ("Mandamus is an extraordinary legal remedy only to be granted where there is a clear specific legal right for enforcement of which there is no other adequate remedy.") (citing *Ex parte Brandon*, 243 Ala. 610, 11 So.2d 561 (Ala. 1943); *Poyner v. Whiddon*, 234 Ala. 168, 174 So. 507 (Ala. 1937)); *Ex parte Jackson*, 212 Ala. 496, 497, 103 So. 558, 559-60 (1925) ("In order to entitle a party to the writ of mandamus he must show that he has a clear legal right to demand the performance of a specific duty. In other words, it is essential that the relator have a clear legal right to the thing demanded, and it must be the imperative duty of the respondent to perform the act required.") (citations omitted).

If a party has no right to appeal, the "only means of obtaining review by a higher court [is] to file a petition for a writ of mandamus." *State v. Maddox*, 828 So. 2d 946, 947 (Ala. Crim. App. 2001), *writ withdrawn*, 828 So. 2d 956 (Ala. Crim. App. 2002). "[A] writ of mandamus is a supervisory order; thus, an appellate court may issue this writ in any situation, within recognized limits, where this writ is necessary to protect the proper

34

judicial administration of the courts." *Id. Hammond* has no impact on plaintiff's well-established option to have filed a petition for a writ of mandamus within a reasonable time after the trial court's adverse order. She simply failed to do so.

Plaintiff's argument that she was deprived of a procedural mechanism for appellate review of the trial court's order is unavailing. "'A writ of mandamus is an extraordinary remedy that is available when a trial court has exceeded its discretion.'" *Ex parte Decatur City Bd. of Educ.*, __ So. 3d __, No. 1170017, 2018 WL 3083603, at *3 (Ala. June 22, 2018) (quoting *Ex parte Fidelity Bank*, 893 So.2d 1116, 1119 (Ala. 2004)). Mandamus relief is "'appropriate when the petitioner can show (1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.'" *Id.* (quoting *Ex parte BOC Group, Inc.*, 823 So.2d 1270, 1272 (Ala. 2001)). The plaintiff argues that the trial court abused its discretion when it denied her motion for DNA testing. She argues that she had a clear legal right to DNA testing under Alabama's DNA law, the trial court was obligated to grant her petition for relief, and that court refused her request. Wilson did lack a remedy other than to petition for mandamus relief, as the Alabama Court of Criminal Appeals decided – before the trial court ruled on her motion for DNA testing – that an order denying such a motion was not appealable. But, had plaintiff timely filed a petition for a writ of mandamus in state court, these arguments could have been advanced before an Alabama appellate court. Instead, plaintiff brings them in federal court cloaked as constitutional challenges. In short, the factual basis for Count II forecloses any chance of success for plaintiff on the merits.

### G.      Denial of Meaningful Access to Courts

Plaintiff Wilson claims that defendants violated her rights under the Petition Clause of the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution. *See* Doc. 1 at 18. She argues that she was denied access to courts because her inability to procure and test the DNA evidence prevents her from filing a Rule 32 motion on actual innocence grounds in an Alabama state court.  The defendants disagree, contending that plaintiff was able to make and did, in fact, raise her arguments by way of her motion to the trial court under Alabama's DNA law, and she lost on the merits.

Wilson was not prevented from filing and arguing the merits of a motion for DNA testing, which she did in 2010. She disagrees with the outcome in state court and, to the extent that – in the instant lawsuit – she attacks the process and holding of the trial court, and the subsequent dismissal of her appeal and mandamus petitions on jurisdictional grounds, such a challenge is barred by the *Rooker-Feldman* doctrine.

In addition, plaintiff's claim of denial of access to a court to file a Rule 32 motion is entirely speculative. Wilson alleges that, if she had access to and tested the DNA evidence, she could seek a new trial under Rule 32 "if the results of the testing are exculpatory." Under Wilson's theory, every unsuccessful claim for DNA testing under Alabama's DNA law – regardless of the motion's merits – would represent a denial of access to the courts because it would deprive the plaintiff of DNA evidence that she could use to seek a new trial through Rule 32 and attempt to demonstrate her innocence. Although *Osborne* did not specifically address this issue, the Court clearly foreclosed a wholesale

substantive right to DNA evidence. Plaintiff's theory would create an impermissible, unchecked substantive right to DNA evidence if an Alabama state court denies a motion under Alabama's DNA statute. *See Osborne*, 557 U.S. at 72, 129 S. Ct. at 2322 (there is no substantive due process right to post-conviction access to DNA evidence).

Finally, an access to courts claim typically arises where a prisoner is blocked from access to a law library or the materials needed to make a claim in court. *See, e.g., Bounds v. Smith*, I430 U.S. 817 (1977). To have standing to maintain a claim for denial of access to court, a plaintiff must show an injury – *i.e.*, "the plaintiff must have an underlying cause of action the vindication of which is prevented by the denial of access to the courts." *Cunningham*, 592 F.3d at 1271. Wilson has established no such injury beyond speculation that possible DNA testing results might support a Rule 32 motion, which might or might not be granted. Standing requires a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315 (1984). If this court undertook to decide the merits of this claim, any such adjudication would constitute an impermissible advisory opinion, as there is no actual case or controversy because plaintiff lacks standing. "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341, 126 S.Ct. 1854 (2006).

Both because of lack of subject matter jurisdiction, and under Rule 12(b)(6), defendants are entitled to dismissal of this claim.

## H.    Actual Innocence

Wilson asserts a claim through § 1983 for "denial of opportunity to prove actual innocence." Doc. 1 at 19 (Count IV). Plaintiff avers that,

> [b]y refusing to release the physical evidence for DNA analysis, and thereby preventing Ms. Wilson from gaining access to evidence which could exonerate her, Defendants have denied Ms. Wilson the opportunity to make a conclusive showing that she is actually innocent of the crime for which she is currently incarcerated, in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

*Id.*

The doctrine of "actual innocence" or "miscarriage of justice" is applied by courts as an "exception to overcome various procedural defaults" that stand in the way of habeas petitioners – for example, successive petitions, abusive petitions, failure to develop facts in state court, and failure to abide by state procedural rules. *McQuiggin v. Perkins*, 569 U.S. 383, 392-93, 133 S.Ct. 1924, 1931 (2013) (citations omitted). In *McQuiggin*, the Supreme Court observed that

> We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence. *Herrera v. Collins*, 506 U.S. 390, 404-405, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). We have recognized, however, that a prisoner "otherwise subject to defenses of abusive or successive use of the writ [of habeas corpus] may have his federal constitutional claim considered on the merits if he makes a proper showing of actual innocence." *Id.*, at 404, 113 S.Ct. 853 (citing *Sawyer v. Whitley*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)). *See also Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) ("[W]e think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."). In other words, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims … on the merits notwithstanding the existence of a procedural bar to relief. "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not

result in the incarceration of innocent persons." *Herrera*, 506 U.S., at 404, 113 S.Ct. 853.

569 U.S. at 392, 133 S.Ct. at 1931.

In the same year in which Wilson was convicted of capital murder, the Supreme Court determined that the "body of our habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 862 (1993) (assuming, without deciding, that a cognizable actual innocence claim existed to examine an asserted Eighth Amendment substantive right by a habeas petitioner). *See also Schlup v. Delo*, 513 U.S. 298, 314-15, 115 S.Ct. 851, 860-61 (1995) (quoting *Herrera* and assuming arguendo an actual innocence claim to examine a procedural right asserted by a habeas petitioner). Further, the Eleventh Circuit has "observ[ed] that it is not clear at all under the case law whether the claim that [the petitioner] now raises – a freestanding actual innocence claim – is viable on federal habeas corpus review." *In re Davis*, 565 F.3d 810, 816 (11th Cir. 2009). Following the lead of the Supreme Court, *Davis* notes that the Eleventh Circuit "likewise [has] recognized the possibility of freestanding actual innocence claims." *Id.* at 817 (internal citation omitted). The Court has "also recognized that '[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding[.]'" *Id.* (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002) (quoting, in turn, *Herrera*, 506 U.S. at 400, 113 S.Ct. at 860)).

Notably, in *Herrera* and here, "the validity of proceedings that resulted in conviction" were not disputed, and Herrera's and Wilson's actual innocence "claim was evaluated on the assumption that the trial that resulted in his conviction had been error free." *Schlup*, 513 U.S. at 315. "In such a case, when a petitioner has been tried before a jury of [her] peers, with the full panoply of protections that our Constitution affords criminal defendants, it is appropriate to apply an extraordinarily high standard of review." *Id.* at 315-16 (internal citations and marks omitted).

Nine years ago in *Osborne*, the Supreme Court made the following observations with respect to claims of "actual innocence":

> Whether such a federal [constitutional] right [to be released upon proof of "actual innocence"] exists is an open question. We have struggled with it over the years, in some cases assuming, arguendo, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet. *House*, 547 U.S., at 554-555, 126 S.Ct. 2064; *Herrera*, 506 U.S., at 398-417, 113 S.Ct. 853; *see also id.*, at 419-421, 113 S.Ct. 853 (O'Connor, J., concurring); *id.*, at 427-428, 113 S.Ct. 853 (SCALIA, J., concurring); Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L.Rev. 142, 159, n. 87 (1970). In this case too we can assume without deciding that such a claim exists, because even if so there is no due process problem.
>
> Osborne does not dispute that a federal actual innocence claim (as opposed to a DNA access claim) would be brought in habeas. … If such a habeas claim is viable, federal procedural rules permit discovery "for good cause." 28 U.S.C. § 2254 Rule 6; *Bracy v. Gramley*, 520 U.S. 899, 908-909, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997).

557 U.S. at 71-72, 129 S.Ct. at 2321-22.

This lawsuit is a § 1983 action, not a federal habeas case. "Section 1983 creates a cause of action for anyone subjected 'to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' by a person acting under color of state

law." *Cunningham v. Dist. Attorney's Office for Escambia Cty.*, 592 F.3d 1237, 1255 (11th Cir. 2010) (quoting 42 U.S.C. § 1983). The plaintiff has not cited, and this court has been unable to locate, any authority establishing that the remedial vehicle of § 1983 can be used to bring before this court an actual innocence claim that is assumed by some courts to exist within the habeas context, and is employed by those courts in that context as a gateway or vehicle to assess a separate constitutional claim. Further, plaintiff's *Herrera*-based and *Schlup*-based actual innocence claim brought under § 1983 is foreclosed under *Osborne* and *Cunningham*. *See Cunningham*, 592 F.3d at 1255 (11th Cir. 2010) ("Cunningham conceded that his … *Herrera*-based actual innocence … claims did not survive the *Osborne* decision. We agree with those concessions.") (citing *Osborne*, 129 S.Ct. at 2319-23). Therefore, defendants are entitled to dismissal of plaintiff's actual innocence claim.

## IV.    Conclusion, Recommendation, and Order

Accordingly, for the reasons explained herein, it is the **RECOMMENDATION** of the Magistrate Judge that:

1.   Defendants' Rule 12(b)(1) motion to dismiss, *see* Doc. 8, be **GRANTED IN PART** as to plaintiff's claims inviting the court to review state court decisions, because such review is barred under the *Rooker-Feldman* doctrine for the reasons discussed *supra*; these claims are due to be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. Plaintiff's claims for federal court review of state court decisions are comingled with other claims and theories in Count I (Violation of Procedural Due Process), Count II (Denial of Due Process on Appellate Review), and Count III (Denial of Meaningful Access to the Courts). The portions of Counts

I, II, and III that do not seek federal review of state decisions are addressed *infra*. The balance of defendants' Rule 12(b)(1) motion is due to be **DENIED**.

2. Defendants' Rule 12(b)(6) motion to dismiss, *see* Doc. 8, be **DENIED IN PART** as to plaintiff's claim in Count I that Alabama's DNA law is facially unconstitutional and **GRANTED IN PART** as to all remaining claims asserted in plaintiff's complaint in Counts I, II, III, and IV. With the exception of plaintiff's claim in Count I that Alabama's DNA law is facially unconstitutional, Counts I, II, III and IV are due to be **DISMISSED**.

In addition, it is

**ORDERED** that, because defendants do not indicate in the Rule 12(b)(6) motion to dismiss whether they move for dismissal with or without prejudice, defendants shall file, for the benefit of the reviewing District Judge, a notice indicating whether they seek dismissal with or without prejudice as to their motion to dismiss pursuant to Rule 12(b)(6) on or before September 24, 2018. *See* Doc. 8. The decision to dismiss with or without prejudice has no impact on this Recommendation regarding the merits of defendants' Rule 12(b)(6) motion. Further, it is

**ORDERED** that plaintiff's motion for oral argument and renewed motion for oral argument are **DENIED** as moot. *See* Doc. 18; Doc. 21. Finally, it is

**ORDERED** that **on or before September 24, 2018**,[14] plaintiff may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the

---

[14] To accommodate internal court deadlines, the undersigned has slightly shortened the usual period for filing objections. *See Alvarez v. Tracey ex rel. Gila River Indian Cnty. Dep't of Rehab.*

Magistrate Judge's Recommendation to which plaintiff objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  Failure to file a written objection to the Magistrate Judge's findings and recommendations under 28 U.S.C. §636(b)(1) shall bar a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of a party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

      Done, on this the 14th day of September, 2018.

                           /s/ Susan Russ Walker
                           Susan Russ Walker
                           United States Magistrate Judge

---

*& Supervision,* 2012 WL 1038755, at *7 (D. Ariz. Feb. 10, 2012)("[i]n it discretion, the Court will shorten the time for filing of objections")(citing *Tripati v. Drake*, 908 F.2d 977 (9th Cir. 1990)(the court need not afford the parties the full amount of time allotted for filing objections; the time allotted is a maximum, not minimum)); *Sabal Trail Transmission, LLC. v. 7.72 Acres In Lee Cty., Alabama*, 2016 WL 10789585, at *1 (M.D. Ala. 2016) ("where exigencies exist, a court may shorten the time for filing objections."); *Securities and Exchange Commission v. Lauer*, 2016 WL 3225306, *2 (S.D. Fla. Mar. 3, 2016)(shortening the usual fourteen day objection period due to concerns about the fiscal quarter end); *United States v. Williams*, 2016 WL 304320 (M.D. Ala. Jan. 22, 2016)(Mendoza, J.)(noting that the magistrate judge ordered that due to exigent circumstances, the objections period was shortened to two days and adopting the report and recommendation); *Esco Marine, Inc. v. SS Pacific Star*, 2011 WL 5026192 at *1, n.1 (E.D. Cal. Oct 21, 2011)(Mueller, J.)(shortening the time period for objections because "exigencies of the calendar require[d]"it)(quoting *United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978), *cert denied*, 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978)(holding that trial court did not err in providing parties less than the [then-applicable] full ten-day period to file objections to the magistrate judge's report and recommendation where exigencies existed, stating that the ten-day objections period constituted a "maximum, not a minimum.")).