IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BETTY WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:14-CV-1106-RAH |
| ) | (WO) |
| MADISON COUNTY DISTRICT ) | |
| ATTORNEY'S OFFICE, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION and ORDER**

Pursuant to 42 U.S.C. § 1983, Plaintiff Betty Wilson ("Wilson"), a state prisoner serving a life sentence for capital murder, filed this lawsuit challenging the constitutionality of the State of Alabama's DNA testing statute, Ala. Code § 15-18-200, and the state court's denial of her efforts to obtain DNA testing under that statute. This matter is currently before the Court on the Report and Recommendation ("Recommendation") (Doc. 65) of the United States Magistrate Judge that the Plaintiff's Motion for Summary Judgment (Doc. 39) be denied and the Defendants' Motion for Summary Judgment (Doc. 38) be granted to the extent it seeks a declaration that Code of Alabama § 15-18-200 is not facially unconstitutional. On September 8, 2021, Wilson filed Objections (Doc. 68) to the Magistrate Judge's Recommendation (Doc. 39).

The Court has conducted an independent and *de novo* review of those portions of the Recommendation to which objection is made. *See* 28 U.S.C. § 636(b). Upon this Court's review and consideration of the arguments set forth in the Objections, the Court agrees with the Magistrate Judge's findings and analysis.

## THE STANDARD

When a party objects to a magistrate judge's report and recommendation, the district court must review the disputed portions de novo. 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify the recommended disposition; receive further evidence; or resubmit the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). De novo review requires that the district court independently consider factual issues based on the record. *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990). If the party does not object to specific factual findings, the court reviews them only for clear error. *Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993).

## DISCUSSION

The Court has carefully reviewed the record in this case, the Recommendation of the Magistrate Judge, and Wilson's objections. Many of Wilson's objections were raised as arguments in her brief and/or response and were thoroughly addressed by the Magistrate Judge. However, upon de novo review, this Court finds the foregoing objections to the Magistrate Judge's Recommendation granting the Defendants'

motion for summary judgment on the facial challenge to the DNA statute warrant further discussion.

### A. Objections based on Authoritative Construction

### 1. The *Cooper* Framework

First, Wilson objects to the Magistrate Judge's refusal to apply the framework set forth in *Cooper v. Oklahoma*, 517 U.S. 348, 362 (1996), to this case. In the Recommendation, the Magistrate Judge discussed her reasons for choosing not to apply *Cooper* in two footnotes. In footnote one, she determined:

> In her brief, Plaintiff writes: "'[T]he vast majority of jurisdictions remain persuaded that the heightened standard of proof imposed on the accused' by Alabama 'is not necessary to vindicate the State's interest,' *Cooper*, 517 U.S. [348, 360 (1996)],' and have recognized that the reasonable probability standard safeguards the liberty interest of the convicted persons to access DNA evidence that can prove their innocence." Doc. 40 at 32. This statement implies that other jurisdictions recognize Alabama as imposing a heightened standard or a standard higher than a reasonable probability, which is misleading. The case Plaintiff cited, *Cooper*, did not address Alabama's DNA statute, and she cites no other legal authority characterizing Alabama's burden as "heightened."

(Doc. 65 at 11, fn.1.)  The Magistrate Judge further noted:

> Wilson never labels the standard she claims is imposed by Alabama's DNA statute, stating only that it is "heightened" when compared to a "reasonable probability" standard. Additionally, she relies heavily on *Cooper*, *supra*, as a case in which "the U.S. Supreme Court outlined the framework by which to analyze whether a state's procedural burden comports with the requirements of due process." Doc. 40 at 27. In *Cooper*, the Supreme Court held an Oklahoma statute to be fundamentally unfair because it required a defendant to prove incompetence by clear and convincing evidence instead of the lower

3

> preponderance-of-evidence standard used by 46 other states and federal courts. *Id*. at 27–28. First, Cooper involved mental incompetence before trial, when, as recognized in *[District Attorney's office for the Third Judicial Circuit v.] Osborne*, [557 U.S. 52 (2009)], defendants are afforded more constitutional protections and states are afforded less flexibility. Second, *Osborne* dealt specifically with postconviction DNA testing and was decided thirteen years after *Cooper*. Wilson's reliance on *Cooper* ignores *Osborne* and the Eleventh Circuit's recognition that *Osborne* applies. *See Cromartie*, 941 F.3d at 1251 ("The Supreme Court established a framework for evaluating claims like Cromartie's [a facial due process claim to postconviction DNA testing procedures] in [*Osborne*]."). When this was pointed out by Defendants, Wilson conceded that *Cooper* is "not directly applicable." However, she argued its reasoning and approach are instructive because, unlike *Osborne*, the two procedural burdens she challenges are not similar to other federal and state laws, and, further, she tried using Alabama's procedures but failed. Doc. 56 at 17–18. Considering that *Cooper* also did not involve the procedures challenged here and that Wilson's claims about how the statute was applied in her case have been dismissed, the Court fails to see how *Cooper* is more instructive than *Osborne*.

(Doc. 65 at 12, fn. 2.)

Wilson argues the Magistrate Judge erred in distinguishing *Cooper* on the basis that the case "involved mental incompetence before trial." (Doc. 65 at 12, fn. 2.) Specifically, she maintains "[t]he Court's analysis [in *Cooper*] had nothing to do with the posture of the case." (Doc. 68 at 10.) The Magistrate Judge, however, set forth many logical reasons for distinguishing *Cooper*, including the Defendants' concession that *Cooper* is "not directly applicable" under the circumstances of Wilson's case. (*Id*.) Thus, to the extent Wilson objects to the Magistrate Judge's notation that one of the many factors distinguishing *Cooper* is that the case involved

mental incompetence, the objection is overruled.

Within her objections, Wilson also reasserts the same arguments she raised in her brief in support of her motion for summary judgment (Doc. 40) and her reply (Doc. 50).  Specifically, she argues that this Court should examine current practices in jurisdictions outside of Alabama when determining the "fundamental fairness" of the State's procedure for post-conviction relief.  (Doc. 68 at 12-14.)  She maintains this Court should consider the majority of jurisdictions with standards of proof which are more favorable to the accused. (*Id*.)  She contends that, when analyzing a facial constitutionality claim, the Court should apply the framework set forth in *Cooper*, which she argues was not superseded by *Osborne*.

This Court recognizes that *Cooper* has not been superseded.  Nonetheless, the Court agrees with the Magistrate Judge's determination that the test for evaluating a due process claim as set forth in *Osborne* and the cases applying its test, including *Cromartie v. Shealy*, 941 F.3d 1244, 1251 (11th Cir.), *cert. denied*, 140 S. Ct. 519 (2019), are applicable to Wilson's case.

### 2. The Constitutionality of §15-18-200(f)(2)

Wilson objects to the Magistrate Judge's determination that she failed to demonstrate that "the Alabama statutory scheme was unsuccessful in all circumstances." (Doc. 68 at 14.)  The Magistrate Judge specifically rejected Wilson's argument that "Alabama's burden of proof under (f)(2) is unconstitutional

in all circumstances." (Doc. 65 at 31-33.) Section 15-18-200(f)(2) of the Alabama Code provides, "The Court may not order the testing requested in a motion for DNA testing if, after review of the petition, the state's response, if required, and the record of the trial of the applicant, the court determines that there is no reasonable possibility that the testing will produce exculpatory evidence that would exonerate the applicant of the offense for which the applicant was convicted."

### a. The Few Alabama Cases Granting Requests for DNA Testing

Wilson argues that, because Alabama courts have granted only three requests for post-conviction DNA testing out of the twenty-two cases referenced in her summary-judgment brief, the statute is arbitrary and fundamentally unfair in its operation. (Doc. 68 at 14-15.) This Court, however, agrees with the Magistrate Judge that, "[t]he fact that applicants are granted access to DNA testing pursuant to the statute is contrary to a conclusion that the statute is unconstitutional in all circumstances." (Doc. 65 at 32.) Wilson further argues that the lack of legal analysis in the state courts' orders which granted the requests for DNA testing establishes that Alabama's rule is arbitrary and fundamentally unfair in its operation. As discussed by the Magistrate Judge, there are at least three state court actions wherein a request for DNA testing was granted after an evidentiary hearing or based on facts presented in a motion. (Doc. 65 at 33.) Thus, this Court agrees with the Magistrate Judge that there is "no support for Wilson's argument [that], based on the number of

motions granted and the level of detail in the orders, [] there is no set of circumstances under which the DNA statute would be valid." (Doc. 65 at 33.)

### b. The "Reasonable Probability" Interpretation

Wilson objects to the Magistrate Judge's reading of the cases of *Ex parte Hammond*, 93 So. 3d 172 (Ala. Crim. App. 2012), and *Ex parte Suttle*, 213 So. 3d 660 (Ala. Crim. App. 2015) (table), as "reasonable probability cases" as set forth in § 15-18-200(f)(2).  She specifically objects to the Magistrate Judge "treating these decisions as authoritative constructions that put the Alabama statute squarely in the majority of states that require only a reasonable probability of exculpatory results for a litigant to receive testing." (Doc. 68 at 18.)  She argues the Magistrate Judge failed to consider "that neither case resolved the underlying constitutional problem with the statute, that Ala. Code § 15-18-200 permits a court to reject the potential exculpatory results posited by the applicant, thereby allowing courts to deny testing while staying within the subsection of (e)(3)'s mandate by assuming an exclusion." (Doc. 68 at 18-19.)  She raised this argument in her brief in support of the motion for summary judgment.  (Doc. 40 at 41-51.)  The Magistrate Judge conducted a thorough analysis of this issue.  Thus, it is unnecessary to state what has already been stated.  Upon a reading of the cases, consideration of all the arguments of the parties, and a review of the Recommendation, this Court agrees with the Magistrate Judge's conclusion that "*Hammond* and *Suttle* demonstrate that Alabama courts

impose a reasonable probability burden on applicants seeking DNA testing under the statute." (Doc. 65 at 15.)

Wilson also asserts that "[c]ontrary to the conclusions reached in the Recommendation, [Wilson's case] is quite similar to the scenario in *Payne* [129 A.3d 546, 561-63 (Pa. Super. Ct. 2015)] where the state appellate court affirmed the trial court's granting of DNA testing for Payne, who alleged the absence of his DNA and the presence of DNA from someone who matched a state or national database may reveal the identity of the real killer." (Doc. 68 at 22.) The Magistrate Judge considered Pennsylvania's statute and rejected Wilson's reliance on *Payne* as proof that Pennsylvania courts construe their state's statute more favorably than Alabama's statute. (Doc. 65 at 27-29.) This Court agrees with the Magistrate Judge's well-reasoned analysis.

### 3. *Cunningham* and *Cromartie*

Wilson objects to the Magistrate Judge's determination that *Osborne*, *Cunningham v. District Attorney's Office for Escambia County*, 592 F. 3d 1237 (11th Cir. 2010), and *Cromartie* approved "provisions requiring that DNA results establish actual innocence – under reasonable probability standard or the more arduous clear and convincing standard" (Doc. 65 at 20) and therefore the standard at issue in this case does not violate due process (Doc. 68 at 24).

First, Wilson objects to the Recommendation's reliance on *District Attorney's*

*Office for the Third Judicial District v. Osborne*, 557 U.S. 52 (2009). (Doc. 68 at 24-25.) This Court recognizes that the Alaska general postconviction relief statute in *Osborne* is not identical to Alabama's DNA-testing statute. Nonetheless, the issue concerning new DNA-testing technology is similar. As discussed in the Recommendation, *Osborne* held that a state prisoner had no substantive due process right of access to evidence for the purpose of applying new DNA-testing technology that might prove his innocence. The question is whether the state's procedure "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgresses any recognized principle of fundamental fairness in operation." *Osborne*, 557 U.S. at 68 (citation and internal quotation marks omitted). In other words, "[f]ederal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id.* This Court agrees with the Magistrate Judge's determination (Doc. 65 at 6-8) that the framework set forth in *Osborne* is applicable to this case.

Wilson further objects to the Magistrate Judge's reliance on *Cunningham* and *Cromartie*, which follow the reasoning set forth in *Osborne*, to deny relief. Wilson argues that *Cunningham* is inapplicable because it was decided on the basis of Alabama's Rule 32 post-conviction discovery process (instead of the DNA testing statute) and was an "as-applied challenge," not a facial challenge. (Doc. 68 at 25.)

The Eleventh Circuit in *Cunningham*, however, discussed the plaintiff's claim of "facial inadequacy" and concluded that "Alabama's [state post-conviction procedures], like Alaska's, are adequate on their face to satisfy fundamental fairness under the standard set by *Osborne*." *Cunningham*, 592 F.3d at 1268-69. The Magistrate Judge's reliance on *Cunningham* is appropriate.

Wilson also asserts *Cromartie* is distinguishable because it involves Georgia's forensic testing statute, Ga. Code Ann. § 5-5-41(c)(3)(D), which requires no more than that "the favorable DNA testing results create a reasonable probability that [the plaintiff] would have been acquitted had those results been available at trial." (Doc. 68 at 26.) Similarly, both plaintiffs Wilson and Cromartie argued that the state procedure for determining whether a prisoner is entitled to postconviction DNA testing is facially unconstitutional under the Fourteenth Amendment's Due Process Clause. The Eleventh Circuit in *Cromartie* applied the *Osborne* standard when analyzing the plaintiff's challenge to the constitutionality of Georgia's forensic testing statute. *Cromartie*, 941 F.3d at 152-53. Although the wording of Alabama Code § 15-18-200 is somewhat different from Georgia's statute, this Court agrees with the Magistrate Judge's reliance on *Cromartie* and its application of the *Osborne* framework.

**4. The Pennsylvania Statute and *Wagner***

Wilson objects to the Magistrate Judge's reliance on *Wagner v. Dist. Att'y*

*Allegheny Cty, Pa*., No. CIV.A. 11-762, 2012 WL 2090093 (W.D. Pa. May 21, 2012), when comparing the Pennsylvania DNA statute with Alabama's subsection (f)(2).  As discussed in the Recommendation, both *Wade v. Monroe County District Attorney*, C.A. No. 3:15-cv-584, 2019 WL 2084533 (M.D. Pa. May 13, 2019), vacated and remanded, 800 F. App'x 114 (3d Cir. 2020), cert denied, 141 S. Ct. 344 (2020), and *Wagner*, *supra*, discuss the constitutionality of the Pennsylvania statute. (Doc. 65 at 25, fn. 12.)

Wilson argues the Magistrate Judge should have followed the reasoning set forth in *Wade*, 2019 WL 2084533, at *1, *9, *16.  In *Wade*, the Middle District of Pennsylvania determined that the state post-conviction court misconstrued the Pennsylvania statute, specifically noting that other Pennsylvania courts had "repeatedly recognized[] [that] 'the statute does not require [a] petitioner to show that the DNA testing results would be favorable.'" *Id*. at *14. Specifically, the Middle District of Pennsylvania found that the state post-conviction court in Wade's case "construed the DNA statute to read the critical words 'assuming exculpatory results' entirely out of the statute, effective foreclosing *any possibility whatsoever* of relief." *Wade*, at *7 (emphasis in original).

Wilson contends that the Magistrate Judge erred by focusing on *Wade*'s conclusion that, on its face, the statute was constitutionally acceptable, without considering that Alabama has never construed its DNA-testing statute as requiring a

11

petitioner to show no more than that "the DNA testing results would be favorable." *Id*. at *14.  Wilson contends that the plain language of § 15-18-200(f)(2) allows Alabama courts to reject exculpatory DNA results advanced by an applicant that subsection (e)(3) mandates should be presumed, and therefore the statute is violative of the principles of fundamental fairness.  Section 15-18-200(e)(3) provides that a motion for DNA testing shall contain "[p]rima facie evidence demonstrating that the identity of the perpetrator was at issue in the trial that resulted in the conviction of the petitioner and that DNA testing of the specified evidence would, assuming exculpatory results, demonstrate the factual innocence of the applicant of the offense for which the petitioner was convicted."  In other words, Wilson argues Alabama's statute requires "a convicted person to meet a virtually impossible standard, *and*, unlike in Pennsylvania, there are no reasoned state court interpretations of the standard to the contrary." (Doc. 68 at 32.)  She suggests that Alabama requires the applicant to state how testing "would prove [her] factual innocence" and to make a prima-facie showing that DNA results would "demonstrate her factual innocence," while providing no "yardstick" or associated materiality standard by which to demonstrate innocence.   (Doc. 68 at 35, citing Ala. Code §§ 15-18-200(e)(1), (e)(3).)

The Court recognizes that the Magistrate Judge did not extensively elaborate on *Wade*'s analysis in her Recommendation.  Nonetheless, this Court finds the

12

Magistrate Judge's conclusion that, "with *Wagner* and *Wade*, two federal district courts have found Pennsylvania's statute, which is almost identical to Alabama's, to be facially constitutional" (Doc. 65 at 25, fn. 12) is an accurate representation. Wilson's objection on this basis is due to be overruled.

### 5. *In re Ward* **and the** *In Pari Materia* **Argument**

Wilson asserts the Magistrate Judge erred in disregarding *Ex parte Ward*, 89 So. 3d 720 (Ala. 2011), and in rejecting her argument that Alabama courts have failed to read § 15-18-200(e)(3) and (f)(2) *in pari materia* with Rule 32 of the Alabama Rules of Criminal Procedure. She contends that, because the DNA statute was construed by Alabama courts as placing a higher burden on a petitioner than a Rule 32 petition for post-conviction relief, the statute, as authoritatively construed, defies *Ward* and the principles of fundamental fairness.

As discussed in the Recommendation, "[w]hen a challenge is made to a state statute, and that statute has been authoritatively construed by the state's highest court, the words of the court become the words of the statute." *Sikes v. Boone*, 562 F. Supp. 74, 76 (N.D. Fla. 1983) (citing *NAACP v. Button*, 371 U.S. 415 (1963)). This Court has reviewed the Alabama Supreme Court's decision in *Ward* along with the DNA testing statute. The Magistrate Judge conducted a thorough analysis of this issue. The Court agrees with the Magistrate Judge's determination that *Ward* does not demonstrate that an inmate has a lesser burden to obtain a new trial under Rule

13

32 than to obtain DNA testing under the DNA-testing statute, as well as her conclusion that the §15-18-200(e)(3) and (f)(2) are not rendered facially unconstitutional on this basis. Thus, Wilson's objection is overruled.

### B. The "Accurate and Reliable Results" Requirement

#### 1. <u>Subsection 200(c)(3)</u>

Wilson objects to the Magistrate Judge's notation that subsection 200(c) becomes mandatory when incorporated into subsection 200(f)(1). In her Recommendation, the Magistrate Judge rejected Wilson's argument that § 15-18-200(c)(1), when read with subsection (f)(1), violates due process. (Doc. 65 at 33.) The Magistrate Judge noted:

> In prefacing this argument, Wilson quotes language from a previous Recommendation issued during the early stages of this case and describing subsection 200(c) as "permissive, not binding, a fact which arguably may provide no guarantee of any due process at all. . . ." Doc. 40 at 72. Given Plaintiff's obvious familiarity with the provisions of Alabama's DNA statute, her quote of this language and failure to acknowledge that 200(c) becomes mandatory when incorporated into 200(f)(1), describing when a court "shall" order testing, is a glaring omission. See Ala. Code §§ 15-18-200(c)(2) and (f)(1)(a).

(Doc. 65 at 33-34, fn. 15.)

This Court recognizes that, at first glance, the language of subsection 200(c), by itself, appears permissive. However, when reading all the language of the statute, *see Brotherhood of Locomotive Eng'rs & Trainmen Gen. Counsel Adj. CSX N. Lines v. CSX Transp.*, 522 F.3d 1190, 1195 (11th Cir. 2008), this Court agrees

14

with the Magistrate Judge's conclusion that, "[g]iving the statute's words their plain and ordinary meaning, the statute requires an applicant to show the evidence in question still exists, it is in a condition that will allow testing, and the testing and analysis will yield accurate and reliable results" and therefore is not fundamentally inadequate. (Doc. 65 at 37-38.) Moreover, Wilson's argument regarding the permissive or binding nature of subsections (c) and (f)(1) and (2) were sufficiently addressed and considered by the Magistrate Judge before forming her conclusion that the statute is not facially unconstitutional. This Court concludes that Wilson's objection to the Magistrate Judge's notation is due to be overruled.

### 2. The Access to Testing

Wilson disagrees with Magistrate Judge's interpretation of the "accurate and reliable results" requirement as applying to testing methodology. Specifically, she argues the Magistrate Judge's interpretation is contrary to the evidence, canons of statutory interpretation, and caselaw. (Doc. 68 at 44.)

Wilson attempts to support her argument by pointing to the expert report (Doc. 40, Ex. 19) of Deanna Lankford, the District of Forensic Casework at Bode Technology, wherein she stated that she "did not – and could not – know" whether testing of the physical evidence would produce accurate and reliable results until the testing was performed and that it is "impossible" to determine if the evidence is in a condition that allows DNA testing to be conducted which would produce accurate

15

and reliable results "before actually conducting the testing." (Doc. 68 at 46, quoting Doc. 40, Ex. 19.) The Magistrate Judge, however, agreed with Wilson that, in most cases, it would be impossible for an applicant to show, before testing, that accurate and reliable results will be produced based on the condition of the evidence; alternatively, the Magistrate Judge suggested that subsection (c)(1) may also be interpreted as requiring only that the "DNA testing and analysis to be conducted will yield accurate and reliable results" and therefore does not require an applicant to "do the impossible." (Doc. 65 at 35.) This Court agrees with the Magistrate Judge's interpretation.

Wilson also points to the affidavit of the Angelo Della Manna, the Director of the Alabama Department of Forensic Sciences. She argues that Manna's affidavit suggests that the items at issue in her case are suitable for DNA testing. In a footnote, the Magistrate Judge disagreed with Wilson's characterization of Manna's affidavit. (Doc. 65 at 34-35, fn. 17.) Upon review of the affidavit, this Court agrees with the Magistrate Judge's finding that "at no point does Manna suggest that any items are suitable for DNA testing." (*Id*.) Moreover, as this Court previously stated in the Recommendation on the motion to dismiss, Wilson "comes perilously close to asserting only as-applied due process challenges . . . by tethering her facial challenge, in part, to the Alabama trial court's denial of her motion for DNA testing." (Doc. 27 at 22.) This Court will not "repackage an attack on the state court's decision under

the guise of a due process claim." (*Id.*, at 23.)

In conclusion, Wilson argues that the fact that the DNA expert is unable to meet the requirement of subsection (c)(1) is proof that "this requirement presents an impossible hurdle for an applicant to surmount." (Doc. 68 at 48.)  She asserts that, "[b]ecause § 15-18-200(c)(1) requires Ms. Wilson and all other DNA applicants to do the impossible, it 'transgresses a[] recognized principle of fundamental fairness in operation.' *Osborne*, 557 U.S. at 69 (quoting *Medina v. Cal.*, 505 U.S. 437, 446, 448 (1992))," and therefore, "[n]o set of circumstances exists under which this provision would be valid. *Salerno*, 481 U.S. [739,] 745 [(1987)]." (Doc. 68 at 48.) Wilson's arguments regarding this matter were previously raised in her briefs and considered by the Magistrate Judge.  Upon a de novo review, this Court agrees with the Magistrate Judge's well-reasoned analysis.

## CONCLUSION

Accordingly, it is

ORDERED as follows:

(1) The United States Magistrate Judge's Recommendation (Doc. 65) is ADOPTED;

(2) The Plaintiff's Motion for Summary Judgment (Doc. 39) is DENIED; and

(3) The Defendants' Motion for Summary Judgment (Doc. 38) be GRANTED to the extent it seeks a declaration that Code of Alabama § 15-18-200 is

17

not facially unconstitutional but DENIED to the extent it seeks other relief.

DONE, on this the 30th day of March, 2022.

                                            /s/ R. Austin Huffaker, Jr.
                                  R. AUSTIN HUFFAKER, JR.
                                  UNITED STATES DISTRICT JUDGE